**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PROERTY OF THE PEOPLE, INC., *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No.:    17-1677 (RC) |
| v. | : | |
| | : | Re Document Nos.:    12, 14 |
| OFFICE OF MANAGEMENT AND | : | |
| BUDGET, | : | |
| | : | |
| Defendant. | : | |

<u>**MEMORANDUM OPINION**</u>

Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment;
Denying Defendant's Motion for Summary Judgment

## I. INTRODUCTION

Pursuant to the Freedom of Information Act ("FOIA"), Plaintiffs Ryan Noah Shapiro and

Property of the People, Inc. seek disclosure of certain portions of entries appearing on an

electronic calendar maintained by the Director of the Office of Management and Budget

("OMB"). Both parties have moved for summary judgment. Citing FOIA Exemption 5's

deliberative process privilege, OMB contends that factual information featured in some calendar

entries—including, the identities of meeting participants and the locations of meetings—is not

subject to release. This is so, OMB argues, even though Plaintiffs do not seek the release of the

specific subject matters of any purportedly deliberative meetings. In addition, citing the

presidential communications privilege, OMB asserts that it may withhold other entries in full.

As explained below, the Court rejects OMB's claim that, in the context of this case, the

deliberative process privilege covers factual information featured in the calendar entries logging

the OMB Director's meetings. With respect to OMB's withholdings under only the presidential

communications privilege and under both the presidential communications privilege and the deliberative process privilege, the Court denies the cross-motions for summary judgment.  The declarations submitted by OMB are insufficiently detailed and conclusory, and thus, do not permit the Court to determine whether the agency may properly withhold any of the disputed calendar entries under the presidential communications privilege.  OMB may file a renewed motion for summary judgment and must submit supplemental declarations and other materials supporting its claimed exemption.  And Plaintiffs may renew their cross-motion in response.

## II.  BACKGROUND

In May 2017, Plaintiffs Ryan Noah Shapiro and Property of the People, Inc. submitted a FOIA request to OMB, seeking (1) all official visitor logs and/or records concerning visits made to OMB; (2) all phone call logs for Director Mick Mulvaney or any acting or permanent OMB Director; and (3) all calendar or appointment books for Director Mulvaney or any acting or permanent OMB Director, generated since January 20, 2017.[1]  *See* Decl. of Heather Walsh ("First Walsh Decl.") ¶ 6, ECF No. 12-3; *see also* Compl. ¶ 9, ECF No. 1.  OMB later informed Plaintiffs that it does not maintain visitor logs or call logs, and thus, it possesses no records responsive to the first two categories of requested documents.  *See* First Walsh Decl. ¶ 6.  Plaintiffs are apparently satisfied with that response, and the motions presently before the Court concern only the final category of records.  *See* Mem. P. & A. Supp. Def.'s Mot. Summ. J. ("Def.'s MSJ") at 2, ECF No. 12-1; *see generally* Mem. P. & A. Supp. Pls.' Cross-Mot. Summ. J & Opp'n Def.'s Mot. Summ. J. ("Pls.' MSJ"), ECF No. 13.

---

[1]  At the time that this suit was filed, it also concerned a FOIA request submitted to the Council on Environmental Quality ("CEQ"), seeking similar records.  *See* Compl. ¶ 12–14, 16. Plaintiffs later dismissed their suit against CEQ.  *See* Stipulation of Dismissal with Prejudice, ECF No. 8.

In its search for records responsive to Plaintiffs' request for calendar or appointment books, OMB reviewed Microsoft Outlook calendars maintained by Mark Sandy—the Acting Director of OMB from January 20, 2017 until mid-February 2017—and by current OMB Director Mick Mulvaney.  *See* First Walsh Decl. ¶ 8.  OMB identified 208 pages of calendar records as responsive to Plaintiffs' request.  *See* First Walsh Decl. ¶¶ 9–13.  OMB released all 208 pages to Plaintiffs, but redacted numerous calendar entries, citing FOIA Exemptions 5 and 6.  *See* First Walsh Decl. ¶ 17.  Plaintiffs do not challenge the adequacy of OMB's search and do not challenge OMB's withholdings under FOIA Exemption 6.  But Plaintiffs dispute a portion of OMB's Exemption 5 withholdings.  *See* Def.'s Statement of Material Facts Supp. Def.'s Mot. Summ. J. ¶ 16 ("Def.'s SMF"), ECF No. 12-2.  Specifically, this suit concerns certain withholdings under Exemption 5's deliberative process and presidential communications privileges.[2]  *See generally* Pls.' MSJ.

Pursuant to the deliberative process privilege, OMB has redacted "calendar entries that would reveal the particular subject matter of agency meetings, as well as entries for preparatory sessions that would reveal the deliberations occurring in subsequent meetings."  Def.'s SMF ¶ 13; *see also* First Walsh Decl. ¶¶ 18, 20–25.  More precisely, OMB contends that it has "redacted certain entries that reference specific narrow discussions reflecting the thinking and deliberations of Executive Branch officials, including the Director."  First Walsh Decl. ¶ 21.  OMB has provided a general description of the topics of discussion at the meetings memorialized by the

---

[2]  Initially, Plaintiffs also challenged Defendant's withholding of a single calendar entry under the attorney-client privilege.  *See* Pls.' MSJ at 22–28.  But OMB has since agreed to turn over the once-disputed entry and, thus, the Court will not assess the propriety of that withholding.  *See* Second Decl. of Heather Walsh ("Second Walsh Decl.") ¶ 7, ECF No. 16-2; *see Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 120 (D.D.C. 2018) ("[T]he standard FOIA claim is typically deemed moot once the agency produces the requested records.").

calendar entries—for example, "tax policy" or "healthcare policy."  First Walsh Decl. ¶ 24; First

Walsh Decl. Ex. 1, ECF No. 12-3.  In addition, OMB has redacted one calendar entry under the

deliberative process privilege because, though the subject matter of the meeting is not featured

directly on the calendar, the entry features the names of meeting participants and, OMB contends

that "[i]f the names of those individuals were released, the topic of the meeting would be easily

ascertained given public, external events going on at the time the meeting occurred."  Second

Walsh Decl. ¶ 6.

Plaintiffs do not challenge OMB's withholding of the subject matter of the meetings for

which OMB has asserted the deliberative process privilege.  *See* Pls.' MSJ at 1, n.1.  Rather,

Plaintiffs challenge OMB's redaction of additional information included in these calendar

entries—such as, the names of meeting attendees, the locations of meetings, and the "inviter"

who added the meetings to the Director's calendar.  *See* Pls.' MSJ at 1–11.  OMB has agreed to

turn over this information with respect to many calendar entries, but insists that redaction is

warranted to shield the names of meeting participants, the locations of meetings, and the like

with respect to entries for which the agency has determined that release of this information

"would so expose the deliberative process that it must be covered by the privilege."  *See* Def.'s

Consolidated Opp'n to Pls.' Cross-Mot. Summ. J. & Reply Supp. Def.'s Mot. Summ. J. ("Def.'s

Opp'n & Reply") at 6, ECF No. 16 (internal quotation marks omitted) (quoting *Wolfe v. HHS*,

839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)).

Pursuant to the presidential communications privilege, OMB has redacted "calendar

entries that memorialize communications with the President, Vice President, or their senior

advisors, or preparations for such meetings."  Def.'s SMF ¶ 14.  According to OMB, it has "only

redacted those entries in which (1) the President or Vice President attended the meeting; (2) the

meeting took place in a location in which it would be easily inferred that the President or Vice President was in attendance; or (3) the calendar entry reflected preparation for a meeting that fell under one of the previous two categories."  Second Walsh Decl. ¶ 3.  These meetings include "instances in which Director Mulvaney either advised the President or Vice President directly or provided advice to other [Executive Office of the President] officials who would use that information and analysis to inform their advice to the President."  Second Wash Decl. ¶ 5.  For entries that OMB contends are covered by both the deliberative process privilege and the presidential communications privilege, Plaintiffs do not challenge the withholding of the subject matter of the meetings.  *See* Pls.' MSJ at 1 n.1.  But for entries for which OMB invokes only the presidential communications privilege, Plaintiffs seek disclosure of all redacted information.  *See* Reply Supp. Pls.' Cross-Mot. Summ. J. ("Pls.' Reply") at 10–22, ECF No. 18.  The parties have filed cross motions for summary judgment, which are now ripe for decision.

## III.  LEGAL STANDARD

### A.  Freedom of  Information Act

The Freedom of Information Act, or FOIA, "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'"  *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)); *see also Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017) ("Congress enacted FOIA to give the public 'access to official information long shielded unnecessarily from public view.'" (quoting *Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice Exec. Office for U.S. Attorneys*, 829 F.3d 741, 744 (D.C. Cir. 2016)).  The Act mandates release of properly requested federal agency records unless the materials fall squarely within one of nine statutory exemptions.  *Milner v. Dep't of*

*Navy*, 562 U.S. 562, 565 (2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  The agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates "that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information."  *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017).  "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure,' while the 'burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'"  *Hardy v. ATF*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (brackets omitted) (quoting *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)).

To carry its burden, the agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of the withheld document to which they apply."  *Elec. Privacy Info. Ctr. v. U.S. Drug Enf't Agency*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).  "[T]he government cannot justify its withholdings on the basis of summary statements that merely reiterate legal standards or offer 'far-ranging category definitions for information.'"  *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 955 F. Supp. 2d 4, 13 (D.D.C. 2013) (quoting *King v.*

*U.S. Dep't of Justice*, 830 F.2d 210, 221 (D.C. Cir. 1987)).  A court will endorse an agency's decision to withhold records if the agency's justification for invoking a FOIA exemption "appears 'logical' or 'plausible.'"  *Pinson v. U.S. Dep't of Justice*, 245 F. Supp. 3d 225, 239 (D.D.C. 2017) (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).  Nonetheless, "exemptions from disclosure must be narrowly construed . . . and conclusory and generalized allegations of exemptions are unacceptable."  *Morley v. CIA*, 508 F.3d 1108, 1114–15 (D.C. Cir. 2007) (citation and internal quotation marks omitted); *see also Senate of Com. of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) ("[W]here no factual support is provided for an *essential* element of the claimed privilege or shield, the label 'conclusory' is surely apt.").

## B.  FOIA Exemption 5

OMB relies solely on FOIA Exemption 5 to shield the disputed calendar entries.  FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  "To qualify, a document must . . . satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *Dep't of Interior v. Klamath Water Users Protective Ass'n ("Klamath")*, 532 U.S. 1, 8 (2001).  "Exemption 5 'incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant'— including the presidential communications privilege, the attorney-client privilege, the work product privilege, and the deliberative process privilege—and excludes these privileged documents from FOIA's reach."  *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006)).

# IV.  ANALYSIS

This case concerns OMB's invocation of FOIA Exemption 5 to shield, in part or in full,
entries from the electronic appointment calendar of the OMB Director.  Citing the deliberative
process privilege, OMB contends that it may withhold information such as the names of meeting
attendees, the locations of meetings, and the "inviter" who scheduled meetings because such
information may be revelatory of agency deliberations.  *See* Def.'s Opp'n & Reply at 4–11.
And, citing the presidential communications privilege, OMB maintains that it may withhold in
full calendar entries that memorialize meetings between the OMB Director and the President,
Vice President, and/or the President's senior advisors—as well as certain entries that reflect
meetings held to prepare for meetings between the OMB Director and the President, Vice
President and/or the President's senior advisors—that were conducted in furtherance of
presidential decisionmaking.  *See* Def.'s Opp'n & Reply at 11–24.

As explained below, with respect to records for which OMB asserts only the deliberative
process privilege, the Court denies OMB's motion for summary judgment and grants Plaintiffs'
motion for the same.  OMB must release factual information—including the names of meeting
attendees, the name of an "inviter," and the locations of meetings—featured in these records.
With respect to OMB's withholdings under only the presidential communications privilege and
under both the presidential communications privilege and the deliberative process privilege, the
Court denies the cross-motions for summary judgment.  The declarations submitted by OMB are
insufficiently detailed and conclusory and, thus, do not permit the Court to determine whether
the agency may properly withhold any of the calendar entries under the presidential
communications privilege.  OMB may file a renewed motion for summary judgment and must

submit supplemental declarations and other materials supporting its claimed exemption. And Plaintiffs may renew their cross-motion in response.

### A. Deliberative Process Privilege

Plaintiffs challenge OMB's reliance on the deliberative process privilege to shield factual information featured in certain entries on the OMB Director's electronic appointment calendar. *See* Pls.' MSJ at 1–11. Specifically, with respect to meetings that OMB has labelled deliberative, Plaintiffs seek disclosure of portions of calendar entries that indicate, among other things, the meeting participants, the locations of meetings, and the "inviter" who scheduled the meetings. *See* Pls.' MSJ at 1–11. Significantly, Plaintiffs do not request that OMB release the subject matter of any of these purportedly deliberative meetings. *See* Pls.' MSJ at 1 n.1. OMB has released factual information for many of the calendar entries, but with respect to a select portion of the entries, OMB has left redacted the meeting location and/or participants because it contends that release of this material "would so expose the deliberative process that it must be covered by the privilege." Def.'s Opp'n & Reply at 6 (quoting *Wolfe v. HHS*, 839 F.2d 768, 773 (D.C. Cir. 1998) (en banc)). As explained below, the Court concludes that OMB must release the disputed material.

The deliberative process privilege "protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated.'" *Loving*, 550 F.3d at 38 (quoting *Klamath*, 532 U.S. at 8). The "privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *Klamath*, 535 U.S. at 8–9 (internal citations and

quotation marks omitted).  The privilege "helps to prevent premature disclosure of proposed

policies and protects against public confusion through the disclosure of documents suggesting

reasons for policy decisions that were ultimately not taken." *Judicial Watch, Inc. v. U.S. Postal

Serv.*, 297 F. Supp. 2d 252, 258–59 (D.D.C. 2004).  "To fall within the deliberative process

privilege, materials must bear on the formulation or exercise of agency policy-oriented

*judgment*." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir.

1992).  A record qualifies for withholding only if it is both "predecisional" and "deliberative."

*Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991).

 "Under the deliberative process privilege, factual information generally must be

disclosed, but materials embodying officials' opinions are ordinarily exempt." *Petroleum Info.

Corp.*, 976 F.2d at 1434 (citations omitted).  Nevertheless, "the D.C. Circuit has cautioned

against overuse of the factual/deliberative distinction." *Goodrich Corp. v. U.S. Envtl. Prot.

Agency*, 593 F. Supp. 2d 184, 189 (D.D.C. 2009).  Instead, courts in this district rely on a

functional approach under which purely factual material is subject to release "unless the material

so inextricably intertwined with the deliberative sections of documents that its disclosure would

inevitably reveal the government's deliberations," *In re Sealed Case*, 121 F.3d 729, 737 (D.C.

Cir. 1997), or the selection of facts "reflects an exercise of discretion and judgment calls,"

*Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011)

(internal quotation marks and citation omitted); *cf.* 5 U.S.C. § 552(b) (providing that "[a]ny

reasonably segregable portion of a record shall be provided to any person requesting such record

after deletion of the portions which are exempt").  That is, courts must "focus less on the nature

of the materials sought and more on the effect of the materials' release: the key question in

[such] cases [is] whether the disclosure of materials would expose an agency's decisionmaking

process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Commc'ns v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987).

OMB has fallen well short of demonstrating that the disputed factual information is so inextricably intertwined with any deliberative portions of the calendar entries that disclosure would reveal the agency's deliberations. First, it is not at all clear how release of the disputed material might reveal any aspect of the agency's deliberative process. In the context of this case, details about where a meeting was held, who scheduled a meeting, and who attended a meeting reveal, at most, insignificant or readily observable details about an agency's decisionmaking process. Indeed, because Plaintiffs have not challenged the withholding of the subject matters of these meetings, it is not even apparent exactly what decisionmaking processes are at issue with respect to any particular calendar entry. Though Plaintiffs might infer the general topic of a meeting from a list of meeting participants—the most potentially revelatory information in dispute—release of this information would expose no suggestions, no recommendations, no proposals, and no other aspect of the agency communications, and it is not apparent how disclosure of this information might in any way discourage candid discussion within the agency. *See Access Reports*, 926 F.2d at 1195 (noting that "[t]he 'key question' in identifying 'deliberative' material is whether disclosure of the information would 'discourage candid discussion within the agency'" (quoting *Dudman Commc'ns Corp.*, 815 F.2d at 1567–68)). And, with respect to the locations of meeting and the name of the "inviter" who scheduled the meetings, the Court struggles to imagine anything one could possibly glean about the agency's deliberations from this information. The Court is not persuaded by OMB's bald assertions to the contrary.

Second, and relatedly, this matter is quite different from *Wolfe v. HHS*, 839 F.2d 768 (D.C. Cir. 1988) (en banc), the primary case on which OMB relies. *See* Def.'s MSJ at 7–11; Def.'s Opp'n & Reply at 6–9. In *Wolfe*, FOIA requesters sought access to a Regulations Log maintained by the Secretary of Health and Human Services ("HHS") that listed regulatory actions submitted by the Food and Drug Administration ("FDA") for review and approval; the date on which HHS received the proposal from FDA; and, if applicable, the date on which HHS had transmitted any approved proposals to OMB. *See Wolfe*, 839 F.2d at 771. Plaintiffs argued that the log contained only factual information that was segregable from any agency deliberative process and that it did not expose the substance of regulatory actions considered by the agencies. *See id.* at 771–72. The Circuit, sitting en banc, disagreed with plaintiffs' contention that, in the context of the case, the fact/opinion distinction offered a useful test to divide deliberative materials from nondeliberative information. *See id.* at 774. The "fact of the forwarding" of certain actions from FDA to HHS and from HHS to OMB, operated as "the functional equivalent of an intra-agency or inter-agency memorandum that states, 'We recommend that a regulation on this [named] subject matter be promulgated.'" *Id.* And "[t]he fact of a failure to forward from the FDA to HHS, or from HHS to OMB [wa]s the equivalent of a memorandum from HHS to FDA that states, 'We disapprove of your recommendation that a particular regulation on this [named] subject matter be promulgated.'" *Id.* at 774–75. Thus, the Circuit concluded that, though superficially factual, the requested information "would reveal the timing of the deliberative process and it would indicate the agency in which the deliberative process is at the moment going forward." *Id.* at 775.

The information at issue in this case functions differently than the records in dispute in *Wolfe*. Unlike in *Wolfe*, the disputed materials in this case have scant potential to expose internal

agency deliberations.  Revealing, for example, that the OMB Director scheduled a "regulatory policy" meeting with certain White House advisors would offer, at the very most, only very limited insight into possible topics of discussion at the meeting.  Certainly, in the context of this case, disclosure of the fact that certain officials met—or, at least, planned to meet—in a particular location does not shed light on whether the agency resolved or even considered any matter at all, let alone expose the exact substance of internal agency decisions and the timing of those decisions, as in *Wolfe*.  The Court disagrees that *Wolfe* bears on the propriety of OMB's withholding in this case.

Third, other courts in this district have held that similar factual information is not protected by the deliberative process privilege.  For example, in *Judicial Watch, Inc. v. Dep't of Navy*, 25 F. Supp. 3d 131 (D.D.C. 2014), a court ordered an agency to release the names of signatories to contracts that the agency had entered with five companies.  *See id.* at 133, 139–40. The court reasoned that the names were "indisputably factual," did not "embody[] officials' opinions," and did not "bear on the formulation or exercise of agency policy-oriented judgment." *Id.* at 140 (internal quotation marks and citations omitted).  Furthermore, the agency had not shown "how the names implicate[d] any deliberative process that may have gone into the creation of [the disputed document] as a whole."  *Id.*  Similarly, in *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13 (D.D.C. 2011), a court in this district concluded that, though factual information from an analytical memorandum was covered by the deliberative process privilege to the extent that it might expose the agency's decisionmaking processes or the timing of internal agency actions, the agency could not withhold segregable factual information that would not expose agency deliberations.  *Id.* at 26–29.  Following the court's *in camera* review of the disputed documents, it found that portions of meeting minutes were segregable

from deliberative material. *See id.* at 29. Specifically, the court concluded that "the headers at the top of each set of minutes that list the date and time of the meeting, the names of the . . . Committee members present, and the names of observers" were subject to release. *See id.*; *see also Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 592 F. Supp. 2d 111, 117–19 (concluding that records of visits by individuals entering parts of the White House complex that were in the possession of the Secret Service were not protected by the presidential communications privilege because, among other reasons, "[s]hielding such general information as the identities of visitors would 'considerably undermine the purposes of FOIA to foster openness and accountability in government'" (quoting *Judicial Watch, Inc.*, 365 F.3d at 1118)).[3] These same considerations apply in this case.

The Court is not persuaded by OMB's invocation of cases involving factual information that could not be released without jeopardizing the privacy of agency deliberations. *See* Def.'s Opp'n & Reply at 7–9. For example, OMB contends that *Elec. Frontier Found. v. Nat'l Security Agency*, 2016 WL 1059389 (N.D. Ca. Mar. 17, 2016)—a decision by a district court in another jurisdiction—supports the application of the deliberative process privilege to the factual material in dispute in this case. In that case, plaintiffs sought release of the names of small government components mentioned in a document that the court had already found to be deliberative. *See id.* at 3. Observing that the question of whether the names would implicate the government's deliberative process presented a "close" question, the court found—without much in the way of

---

[3] It bears mentioning that, in a case involving plaintiffs seeking very similar records, the Circuit concluded that the visitor records were not "agency records" within the meaning of FOIA. *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208 (D.C. Cir. 2013). The Circuit in no way undermined the alternative approach of the district court. *See id.* at 230. Furthermore, the Circuit explicitly noted that its holding did not apply to the records of OMB and other offices located on the grounds of the White House Complex that are subject to FOIA. *See id.* at 232–34.

analysis—that the names were covered by the privilege. *See id.*  But, given that the dearth of

analysis and the fact-specific nature of the application of FOIA exemptions, this Court hardly

regards that case as convincing authority supporting the application of the deliberative process

privilege in this case.

Likewise, OMB cites *Cofield v. City of LaGrange, Ga.*, 913 F. Supp. 608 (D.D.C. 1996),

a case in which plaintiffs sought access to materials maintained by the Department of Justice that

related to voting rights. *See id.* at 612–13.  In that case, a court in this district concluded that

maps that "reflect[ed] manipulation and analysis of the facts by [Department of Justice]

personnel" were not subject to release. *Id.* at 616.  The court also found that "documents with

internal routing notations [we]re within the scope of the [deliberative process] privilege, because

such notations may reasonably lead to identification of those individuals involved in the

decisionmaking process, a result that could chill open and frank discussions within the agency."

*Id.* at 617.  Neither concern is at issue in this case.  As explained above, the release of factual

information regarding who attended meetings, who scheduled meetings, and where meetings

were held is not intertwined with any deliberative process in these particular documents.  And

the disclosure of this information reveals, at the very most, the names of individuals who may

have been consulted on unspecified policy matters and cannot be reasonably understood as

exposing the identities of decisionmakers in a manner that might chill discussions within the

agency.[4]

---

[4] The Court also rejects OMB's suggestion that it might be permitted to withhold factual information, such as the names of individuals who attended meetings with the Director, on the ground that "[i]f the names of those individuals were released, the topic of the meeting would be easily ascertained given public, external events going on at the time the meeting occurred." Second Walsh Decl. ¶ 6.  OMB relies on the "mosaic theory," *see* Def.'s MSJ at 12 n.4, 19, which recognizes that "[t]housands of bits and pieces of seemingly innocuous information can be analyzed and fitted into place to reveal with startling clarity how the unseen whole must

Finally, to accept OMB's contention that the factual material at issue in this case is covered by the deliberative process privilege would flout "the oft-repeated caveat that FOIA exemptions are to be narrowly construed." *FBI v. Abramson*, 456 U.S. 615, 630 (1982); *see also Soucie v. David*, 448 F.2d 1067, 1078 (D.C. Cir. 1971) (noting that "courts must beware of 'the inevitable temptation of a governmental litigant to give [Exemption 5] an expansive interpretation in relation to the particular records in issue" (quoting *Ackerly v. Ley*, 420 F.2d 1336, 1341 (D.C. Cir. 1969)).  OMB argues that information such as the location at which a meeting was held might expose the agency's deliberative process, but OMB fails to articulate how this information might be used to gain an insight into the agency's decisionmaking process or how disclosure of this information might inhibit agency discussions.  In sum, the Court rejects OMB's bald contention that it may withhold factual information featured in the OMB Director's calendar entries.  OMB must release the disputed material, including the names of schedulers, the names of meeting attendees, and the locations of meetings from the calendar entries that it has labelled as deliberative.[5]

---

operate." *Halkin v. Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978).  But OMB cites not one case applying this theory outside of the national security context.  And this Court knows of none.  *Cf. Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926–32 (D.C. Cir. 2003) (describing the deference owed to the Executive in the FOIA national security context).  And OMB fails to explain why application might be appropriate in this case given that it apparently bears no connection to national security.  Furthermore, it seems to this Court that such an extension is potentially limitless and would grossly undermine the purpose of FOIA.

[5]  This conclusion applies to calendar entries for which OMB has asserted only the deliberative process privilege.  For calendar entries for which OMB has asserted both the deliberative process privilege and the presidential communications privilege, the Court will reserve judgment regarding which portions, if any, of those records must be disclosed because, as explained below, the presidential communications privilege sweeps farther than the deliberative process privilege and may shield factual information included in protected records.

## B.  Presidential Communications Privilege

OMB next invokes the presidential communications privilege to shield calendar entries that "memorialize communications with the President, Vice President, or their senior advisors" and entries that "encompass preparations for such meetings."  First Walsh Decl. ¶ 26.  According to OMB, it raises the privilege for "entries in which (1) the President or Vice President attended the meeting; (2) the meeting took place in a location in which it would be easily inferred that the President or Vice President was in attendance; or (3) the calendar entry reflected preparation for a meeting that fell under one of the previous two categories."  Second Walsh Decl. ¶ 3.  OMB asserts that, while it "left unredacted voluminous meetings with vague captions or captions that describes broad topics," First Walsh Decl. ¶ 20, it has "invoked the [presidential communications privilege] judiciously and only for those entries that it deemed sufficiently revelatory of presidential decisionmaking."  Def.'s Opp'n & Reply at 13.

Plaintiffs challenge OMB's withholdings under the presidential communications privilege.  With respect to calendar entries for which OMB has asserted both the presidential communications privilege and the deliberative process privilege, Plaintiffs seek no additional information about the topic of any meetings, and request only disclosure of other information featured in the entry—such as the names of meeting attendees and the locations of meetings.  *See* Pls.' MSJ at 1 n.1.  With respect to entries for which OMB has invoked only the presidential communications privilege, Plaintiffs seeking disclosure of the full entries, including the subject matter of the meetings.  Plaintiffs contend that the presidential communications privilege is inapplicable to the disputed calendar entries because (1) OMB has not adequately demonstrated that the subject matter of the meetings involved advice on matters of direct presidential decisionmaking; (2) OMB has not adequately demonstrated that each meeting involved an

immediate White House adviser or their staff; and (3) even if the topics of meetings are not

subject to release, the privilege does not shield segregable information such as the names of

meeting attendees.  *See* Pls.' MSJ at 11–22; Pls.' Reply at 10–23.  As explained below, the Court

concludes that OMB's submissions are insufficient to demonstrate that any of the disputed

calendar entries are properly shielded by the presidential communications privilege.

Nevertheless, the Court will permit OMB to supplement its submissions and file a renewed

motion for summary judgment.  And Plaintiffs will be permitted to respond to OMB's more

detailed submissions.

      Like the deliberative process privilege, the presidential communications privilege shields

Executive Branch decisionmaking.  *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997).  But

while the deliberative process privilege applies to executive officials generally, the presidential

communications privilege applies specially to the President.  *See id.*  "[R]ooted in constitutional

separation of powers principles and the President's unique constitutional role," *id.*, the privilege

"preserves the President's ability to obtain candid and informed opinions from his advisors and

to make decisions confidentially."  *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008)

(internal quotation marks, citations, and alterations omitted).  The presidential communications

privilege "applies to communications made in the process of arriving at presidential decisions."

*In re Sealed Case*, 121 F.3d at 745.  It covers "documents in their entirety, and covers final and

post-decisional materials as well as pre-deliberative ones."  *Id.*  The privilege protects only

"'communications directly involving and documents actually viewed by the President,'" and

"documents 'solicited and received' by the President or his 'immediate White House advisers

[with] . . . broad and significant responsibility for investigating and formulating the advice to be

given to the President.'"  *Loving*, 550 F.3d at 37 (alterations in original) (quoting *Judicial Watch,*

*Inc. v. Dep't of Justice*, 365 F.3d 1108, 1114 (D.C. Cir. 2004)).  Courts in this district have also found that the privilege extends to internal agency documents that memorialize privileged communications between the agency and President or immediate White House advisers.  *See, e.g.*, *Citizens for Responsibility & Ethics in Wash. v. DHS*, 2008 WL 2872183 (D.D.C. July 22, 2008).

   First, as Plaintiffs contend, it is not at all clear from OMB's filings whether the disputed calendar entries catalog meetings with individuals who qualify as "immediate White House advisers," *Judicial Watch, Inc.*, 365 F.3d at 1112, for purposes of the presidential communications privilege.  Though the D.C. Circuit has not provided specific guidance on the exact parameters of this class of advisers, it has unambiguously rejected an approach that would classify a broad assortment of Executive Branch officials as such advisers.  In *Judicial Watch, Inc. v. Dep't of Justice*, a defendant-agency argued that the presidential communications privilege extended to recommendations authored by the Pardon Attorney because his "'sole' responsibility was to advise the President on pardon applications," rendering him "in effect, a White House adviser" on these issues, "notwithstanding the location and staff function of the Pardon Attorney in the Justice Department."  *Id.*  The Circuit disagreed, holding that "the presidential communications privilege applies only to those pardon documents 'solicited and received' by the President and his immediate White House advisers who have 'broad and significant responsibility for investigating and formulating the advice to be given the President,'" a group to which the Pardon Attorney did not himself belong.  *Id.* at 1114.  The Circuit concluded that the boundaries set by earlier cases had adequately protected the confidentiality of the President's decisionmaking process and found that the extension sought by the agency, which would label as privileged internal agency documents "that never make their way to the Office of the President on the basis that the documents were

created for the sole purpose of advising the President on a non-delegable duty[,] [wa]s unprecedented and unwarranted." *Id.* at 1116–17.

Importantly, the Circuit observed that neither "the Deputy Attorney General [n]or the Attorney General"—both advisers to the President on more varied subjects than the Pardon Attorney—"[can] be equated with the close presidential advisers discussed in *In re Sealed Case*," *id.* at 1120, the Circuit decision that extended the presidential communications privilege "beyond communications directly involving and documents actually viewed by the President, to the communications and documents of the President's immediate White House advisers and their staffs." *Id.* at 1114 (citing *In re Sealed Case*, 121 F.3d at 746–47). Though the Attorney General serves as an adviser to the President, he also acts as the administrator of a Department subject to FOIA, the Circuit explained. *See Judicial Watch, Inc.*, 365 F.3d at 1120. Just as the Circuit had done in prior cases, it declined to disentangle actions taken by the Attorney General in his capacity as adviser to the President from actions taken in his capacity as agency head. *See id.* at 1120–21 (citing *Ryan v. Dep't of Justice*, 617 F.2d 781, 786–89 (D.C. Cir. 1980)); *see also Ryan*, 617 F.2d at 789 ("Many cabinet officers, like the Attorney General, or the Office of Legal Counsel under him, act as advisors to the President for many of their important functions; yet they are not members of the presidential staff or exclusively presidential advisors, and are thus not exempt from FOIA requirements."). The Circuit observed that "[e]xtension of the presidential communications privilege to the Attorney General's delegatee, the Deputy Attorney General, and his staff, on down to the Pardon Attorney and his staff, with the attendant implication for expansion to other Cabinet officers and their staffs, would, as the court pointed out in *In re Sealed Case*, 'pose a significant risk of expanding to a large swath of the executive branch a privilege that is

20

bottomed on a recognition of the unique role of the President.'" *Judicial Watch, Inc.*, 365 F.3d at 1121 (quoting *In re Sealed Case*, 121 F.3d at 752).

Based on the present submissions, the Court cannot discern from OMB's broad and vague descriptions whether—and, if so, which—disputed calendar entries memorialize communications with the President or with the President's immediate White House advisers.  And it appears from OMB's filings that it may have asserted the privilege with respect to meetings between individuals who are decidedly not immediate White House advisers under Circuit precedent.  In arguing that the privilege should apply to the subset of calendar entries that OMB has deemed potentially revelatory of presidential decisionmaking, OMB points to the several meetings that it left unredacted that purportedly "involved the same presidential advisers to whom the D.C. Circuit extended the [presidential communications privilege]."  Def.'s Opp'n & Reply at 12.  The cited unredacted entries memorialize, among other things, a meeting between the OMB Director and the Secretary of State, a meeting between the OMB Director and the Secretary of Homeland Security; and a meeting between the OMB Director and the Secretary of Housing and Urban Development. *See* Def.'s Opp'n & Reply at 12–13.  OMB argues that "[t]he fact that [it] released these and many other calendar entries describing meetings with presidential advisers reinforces the agency's assertion that it invoked the [presidential communications privilege] judiciously and only for those entires that it deemed sufficiently revelatory of presidential decisionmaking."  Def.'s Opp'n & Reply at 13.  But, as explained above, OMB appears to misapprehend the reach of the privilege, as the heads of agencies that are subject to FOIA are not immediate White House advisers for purposes of the application of the privilege.  Indeed, OMB seems to rely on the functional definition of presidential adviser that was explicitly rejected in *Judicial Watch*.  *See Judicial Watch, Inc.*, 365 F.3d at 1112, 1121–22.  And because OMB has not provided an entry-by-entry

accounting of the positions of purported White House advisers involved in meetings for which the agency has asserted the presidential communications privilege, the Court is unable to discern whether any of entries involve advisors for whom the privilege actually applies.

Relatedly, OMB asserts that some of the redacted entries catalog meetings among internal agency staff to prepare for meetings with the President or other White House advisers. *See* Def.'s Opp'n & Reply at 11 & n.5. However, OMB fails to explain why these entries might meet the requirement that documents or other communications directly involved the President or were solicited and received by the President or his immediate White House advisers. OMB cannot rely on the notion that preparatory meetings served some Executive Branch function to claim that a privilege specially related to the unique role of the President applies. As the Circuit explained in *In re Sealed Case* and *Judicial Watch*, the presidential communications privilege does not shield internal agency communications that never reached the President or immediate White House advisers, even if the documents bear on matters of Presidential decisionmaking. *See Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1, 13 n.5 (explaining that "the privilege should not extend to staff in agencies outside the White House who may be providing advice on a matter which may ultimately become one for presidential decisionmaking"); *In re Sealed Case*, 121 F.3d at 752 (noting that "[n]ot every person who plays a role in the development of presidential advice . . . can qualify for the privilege");. "Instead, consistent with . . . the underlying public interest, [an agency's] internal documents that are not 'solicited and received' by the President or the Office of the President should be evaluated under the deliberative process privilege." *Judicial Watch, Inc.*, 365 F.3d at 1121.

In addition, OMB has not shown that each of the disputed entries "reflect presidential decisionmaking and deliberations." *Ctr. for Effective Gov't v. U.S. Dep't of State*, 7 F. Supp. 3d

16, 22 (D.D.C. 2013).  To be sure, in many cases in which the presidential communications privilege has been asserted, courts have not put a spotlight on this requirement.  But, in *In re Sealed Case*, the Circuit explained that the degree and nature of the President's involvement in decisionmaking may be relevant in assessing whether the privilege applies.  *See In re Sealed Case*, 121 F.3d at 746–49.  In the mine-run case, the connection to presidential decisionmaking—as opposed to the decisionmaking authority of other government entities—is either apparent, *see, e.g.*, *United States v. Nixon*, 418 U.S. 683 (1974) (assessing application of the privilege to certain tapes and other document relating to conversations and meetings between the President and others), or the agency has explained the connection to presidential decisionmaking, *see, e.g.*, *Citizens for Responsibility & Ethics in Wash.*, 2008 WL 2872183, at *3 (finding that the presidential communications privilege applied to documents memorializing communications related to "the President's decisions regarding the Federal response to Hurricane Katrina").  In this case, OMB asserts that the privilege applies to certain entries on the calendar of an agency head, but offers no indication of the presidential powers at issue.

OMB is not solely an adviser to the president.  *See Sierra Club v. Andrus*, 581 F.2d 895, 901–02 (D.C. Cir. 1978) (describing the roles of OMB apart from its role as adviser to the president, including discharging its statutory duty to prepare a Budget and "multitudinous other management, coordination, and administrative functions"), *judgment reversed on other grounds*. And the mere fact of communications between the OMB Director and White House staff or agency staff on matters of policy is insufficient to show that calendar entries concern matters of presidential decisionmaking.  It is hardly clear, for example, why the Court should infer that any meetings among OMB staff members concerning preparations for a meeting with the Vice

President necessarily involved a matter of presidential decisionmaking, as OMB seems to suggest. OMB must support its contention that the redacted entries relate to presidential decisionmaking.

Finally, the Court rejects OMB's contention that it is not required to reveal more about the nature of the calendar entries to show that the presidential communications privilege applies. *See* Def.'s Opp'n & Reply at 14. The burden to prove that an exemption applies belongs to the government, and, as explained above, OMB has not discharged its burden in this case. To meet its burden of showing that the presidential communications privilege shields the disputed calendar entries, OMB may show that the "'communications directly involve[ed] and documents [were] actually viewed by the President,'" or that "documents [were] 'solicited and received' by the President or his 'immediate White House advisers [with] . . . broad and significant responsibility for investigating and formulating the advice to be given to the President.'" *Loving*, 550 F.3d at 37 (alterations in original) (quoting *Judicial Watch, Inc.*, 365 F.3d at 1114). Alternatively, OMB may show that "[t]he material withheld either memorializes, summarizes, describes or otherwise reflects the content of actual communications between the President or White House advisers or their staff and agency personnel, even though it was not transmitted to or from the White House in its current form." *Citizens for Responsibility & Ethics in Wash.*, 2008 WL 2872183, at *2 (alterations and internal quotation marks omitted). OMB may file a renewed motion for summary judgment and must submit supplemental declarations and other materials supporting its claimed exemption, as explained in this Opinion. To do so, OMB must provide sufficient information about each calendar entry and may not rely on broad claims to the exemption based solely on the OMB Director's function as an advisor to the President. Plaintiffs may renew their cross-motion in response.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is **GRANTED** with respect to OMB's withholdings under only the deliberative process privilege.  Both parties' motions are **DENIED** with respect to OMB's withholdings under the presidential communications privilege or under both the presidential communications privilege and the deliberative process privilege.  OMB may file a renewed motion for summary judgment and must submit supplemental declarations and other materials supporting its claimed exemption.  And Plaintiffs may renew their cross-motion in response.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  September 14, 2018                                    RUDOLPH CONTRERAS
                                                             United States District Judge